The next case for today is 2017-608-05 United States v. County of Lauderdale et al. Good morning. Good morning. May it please the Court, my name is Christine Monta and I represent the United States in this appeal. The statutory phrase, any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles necessarily encompasses state juvenile courts. In our country, state juvenile courts bear the principal responsibility for the administration of juvenile justice. They hold the hearings to determine whether there's probable cause to detain an arrested juvenile pending trial. They hold the trial to adjudicate the guilt of juveniles accused of a crime. They determine the sentence or disposition of juveniles found guilty in that trial, which can include probation or incarceration. They hold probation revocation hearings to adjudicate claims that a juvenile has violated the terms of his probation, which can also result in incarceration. And in many states, although not in Mississippi, the probation services themselves are a function of the state juvenile court. Probation officers are court employees and they work under the direction of the state juvenile judge. Counsel, can you point us to any case from any court where the word agency was interpreted to include courts absent explicit statutory definition including it, such as in 5 U.S.C. 3371 and 22 U.S.C. 6106? Yes, Your Honor. I would point the court to United States v. Bramblett in 1955, and that's an important point here. The judges are relying heavily on Hubbard v. United States, which construed the term agency narrowly in the context of a criminal statute. But Hubbard was not in existence at the time Congress enacted this statute. At the time Congress enacted Section 12601, the governing precedent for 40 years since Bramblett was that the Supreme Court had construed the phrase department or agency broadly to include all three branches of government, where a narrower interpretation would have done violence to congressional purpose. That is the backdrop on which Congress was legislating. But then once Congress knew that the courts were not treating it that in another case, they didn't go back and say, we need to make sure we button this up. You're talking about post-Hubbard? Well, Congress went back and amended Hubbard, or amended the federal false statement statute. Right, but they fixed it so that it would be okay. But they didn't go back and say, we need to do an audit of these things because we really do mean to cover courts. Your Honor, I don't think that Congress at that point would have been necessarily thinking about all of the various statutes in which it had used the term agency. If Congress does define agency to include courts in some statutes, doesn't that actually cut against the fact that it meant to define agency to include courts here? I don't think so, and I would point the Court to the Supreme Court's decision in Robinson v. Shell Oil. That's the case involving the interpretation of whether the word employee in Title VII's anti-retaliation provision included former employees. And just as here, the Court recognized in that case, first of all, that on first blush, the term employee would seem to apply only to current employees. And secondly, that Congress had in many other statutes actually defined the term employee to include former employees. And what the Court said in that opinion was that only shows that the Court can use the undefined, unqualified term employee in a narrower sense. It doesn't mean that that's what the Court did, that's what Congress meant to do in that particular case. And the same would apply here. I would also note, Your Honor, talking about the backdrop of existing law, I think it's relevant that 11 years after the Supreme Court decided Bramblitt in 1966, Congress enacted the Administrative Procedures Act. That's cited both in our brief and in Appellee's brief. And in that statute, Congress felt the explicit need to state that the term agency did not include Congress and did not include courts, which I think demonstrates that in light of Bramblitt, Congress would have understood that the term agency could bear a broader meaning. I'm curious, and this is a very important case, they all are, but you've achieved vital settlements cooperatively with Memphis and St. Louis and those court systems. But let's say the government's acknowledgment that the common parlance, the text, doesn't answer this, and you've acknowledged there's no legislative history that Congress intended to sweep in courts. Bramblitt would be best authority, but there's an argument that Hubbard then supersedes that, and then, as my colleague just mentioned, then Congress did a fix that said, okay, we'll use three branches. So if ultimately we feel bound by or agree with Justice Stevens' comment that it would be strange indeed to describe a court as an agency, do you lose? And what I'm getting at is I don't see why the government isn't arguing here that the exact language of 12601 would include judges and courts whenever they aren't operating in an adjudicatory capacity. That is to say, if they're appointing prosecutors or if they're appointing detention facility people, they're in an administrative capacity and they would be covered. But it seemed to me your argument to us is judges in all capacities are comprehended. I think that that's right, Your Honor, and our position, we certainly recognize, I mean, we cited in our opening brief that in ordinary parlance the word agency in the abstract is thought to refer only to executive branch agencies. But first of all, the court can't construe that word in isolation or in the abstract. I'm just asking you to assume that for the set of reasons I said, we don't see that judges in their adjudicatory capacity, state judges, were contemplated. I don't, I'm wondering whether the government is making an argument that alternatively, state judges who are not acting as judges, doing all these administrative executive roles, would still be covered. But you haven't given us much insight into that. Well, I think that, I mean, I think the court could go in that direction, but the statute says that it applies to officials or employees of any governmental agency. And so I don't know that there would be a textual basis to parse out a court as an agency in some functions but not an agency in another. Didn't the Supreme Court in Hubbard, I'm sure you know it very well, in the footnote three do exactly that, that courts comprehend agencies inside them. And they listed that. There can be agencies within courts. Okay, so why aren't immense responsibilities assigned very clearly in Mississippi law to the juvenile courts equivalent to agencies, the intake unit, the prosecutors? It just, it's a very hard leap for me to see that Congress intended, textually, doctrinally, legislative history, that judges, quad judges, where these juveniles do have an opportunity for relief in the state court system, are brought in, sub silencio, even when Congress later is writing fixed legislation that can state very clearly if they met courts. Your Honor, I think that we would rely on two things. One is, again, the fact, what I've already alluded to, which is at the time that Congress wrote this statute, Hubbard was not in existence. Congress would have contemplated that the term agency could be more encompassing. The second point that I would point Your Honor to is in the text of the statute itself. We see, first of all, that Congress used the term any, not executive, so it's not thinking only about executive agencies. But after the term agency, we see the types of bodies and actors that Congress intended to come within the scope of this statute. Who are they agents of? If it's an agency, it's an agent of someone. Your Honor, I don't... So who are they agents of? I thought they were responsible only to their constituents in the law, but they're not constituents in promises of campaigns and that sort of thing. But they're only responsive to follow the rule of law. And they're independent. They are not agents of the state in the same way either executive agencies or any other type of legislative agencies, if they had some. Well, Your Honor, I think that they are agents of the state insofar as they are doing the administration of juvenile justice in the state. But just because a judge does administrative duties, for example, the federal courts deal with the supervised probation officers and things in various capacities in the courtroom and ask for certain things from them. They hire federal public defenders. They have numerous, numerous administrative duties. They still retain their independence from both Congress and the executive branch. And they're not agents of either. There's no denying that, Your Honor. But again, I think that our point is that at the time that Congress enacted this statute, the term agency, Congress would have understood, could bear a broader meaning. I want to make an important point related to Your Honor's point that I don't want to get lost here, which is that this court should recognize that there's just a vast amount of variation in how juvenile systems are structured from state to state. So while in many states, such as Mississippi, many of these functions that both of Your Honors are referring to are parsed out into separate agencies that are independent of the judges and independent of the youth court, in other states those functions are subsumed within the court. So for example, in Mississippi, we know that there's a state executive agency that handles probation. But if you go right next door in Louisiana, probation officers are defined by state statute as court employees. The same is true in my home state of Ohio. Probation officers are court employees that work under the direction of the juvenile judge. The same is true if you go to Missouri, where we have our memorandum of agreement with St. Louis County. Not only probation functions, but that patchwork, although relevant, isn't intimidating. It would fit right into pretty subtle law that does distinguish between judges and employees of judges that are adjudicatory and those that are administrative. It wouldn't be hard to do that. Your Honor, I think to the extent there's precedent for that sort of parsing, the court can do that. But again, I think looking at the text of this statute, the text says it applies to officials or employees of any governmental agency. If the court is going to construe the statute the way defendants want you to, which is to say that juvenile courts are just not agencies within the meaning of the statute, then that would exclude not only judges, but that would exclude any official or employee of a court, which can include court reporters, which can include... They're acknowledging that those people wouldn't be carved out no matter who their sort of titular employer is. Well, I'm not sure that they've made that fine of a distinction. I think their acknowledgment in their brief is assuming that those personnel are not considered court employees. But there are states in which those actors are employees of the court. And in those states, if this court is to construe this statute as not encompassing juvenile courts, then you would be excluding from the statute's purview those actors and constitutional violations that those actors might be committing. But we're only dealing with this state in this case. We're not deciding this for once and for all for every configuration that this could possibly be. And so, I mean, if they have made a concession and we'll have to ask them that jailers and probation officers are subject to it, then that applies in this... We look at this case that we treat them differently. Your Honor, this court's opinion is going to have binding precedent on all of the states. I know. Texas, Mississippi, and Louisiana. And it will also have significant persuasive value across the country because this is the first circuit court to actually address this issue. Have you litigated this in the district court? I'm sort of amazed that 12601 scope hasn't been litigated. Can you point to anything in... nothing? This is the first case addressing the juvenile prong that has reached litigation. But we don't always lump even all three states the same way if the different concessions are made in litigation or different approaches are made. We have different cases ongoing and other issues regarding court systems. Even right now, I can think of between two different states that are each proceeding on their own path. Your Honor, my point about the variation from state to state is a textual point. What's the limiting principle to your argument? The logic of it would suggest to me you're saying it would include not just juvenile courts but intermediate and even the Supreme Court to the extent that their case law is dictating treatment of juveniles. What do you have as a limiting principle? And does it include, apparently in Mississippi, they get preferential accelerated appeals on juvenile cases to the Supreme Court? So would you contemplate the Department of Justice asking a federal district court to control juvenile case law coming out of Mississippi's Supreme Court? If not, how do you articulate a limiting principle? Your Honor, I haven't been authorized to take a position on that exact... Oh, come on. It's very obvious under, if I'm right about Mississippi law, that juvenile court decisions get appealed to the Supreme Court. Does your interpretation of 12601 mean the Department of Justice can submit to federal district court a request to hold that the state Supreme Court has a pattern and practice of unconstitutional behavior? Yes or no? Your Honor, I think that if we had findings that there was a pattern or practice... In the case law, yes. In the case law, I don't think that the case law would come within the terms of the statute. We're talking about the responsibility for administering juvenile justice. But that gets back to my distinction. If you're complaining about whether or not an initial appearance occurs quickly enough, and there's Supreme Court law in Texas that says within 48 hours, is that within the scope or not within the scope of your interpretation? All the juvenile courts are doing is following Supreme Court case law in the state, and yet you perceive a pattern and practice of violations following that law. Your Honor, our claim with regard to... We're bringing procedural claims with regard to... Only procedural. We're bringing procedural claims, and these are claims that the youth court... May I go for a second more? Please. Each side can have five additional minutes. That was my opening premise. Is the content... Maybe I'll phrase it this way. You have a complaint. It hasn't been updated with the settled defendants. That's wonderful they've settled. If we take out the conduct of the settled defendants, you're telling me the remainder of the pattern and practice that you allege is purely procedural. Yes, exactly. So it wouldn't embrace judicial qua adjudicatory behavior. No, and I'm sorry that I didn't... I think I either misunderstood the question or I just didn't make that clear. All of our claims and all of the relief that we're seeking are procedural claims. We're seeking simple, non-discretionary procedural mechanisms, like you have to hold probable cause hearings within 48 hours as County of Riverside requires. You have to actually make probable cause findings at those probable cause hearings. I promise my last question, and I appreciate the extra time. But if the juvenile courts are holding those hearings in 48 hours because Mississippi Supreme Court law says that, it would sound to me like the government's got to come up with a limiting principle or tell me that the scope of 12601 doesn't extend to higher courts. So I'm sorry, you're suggesting that if Mississippi Supreme Court law says they can go beyond the 48 hours? Which it does currently. This is not a hypothetical, though doesn't the law say on holidays and weekends that you can go beyond explicitly statutorily? Sure, so it may be that there is a conflict between state law and federal constitutional law, but we are seeking to vindicate federal constitutional law. And the challenges that we're raising, the claims that we're raising, are that the practices of the Lauderdale County Youth Court are not complying with the federal constitutional requirements under County of Riverside. We're not making any claims about the constitutionality of state law, either statutory law or case law. Our concerns are the practices and the policies of the Lauderdale County Youth Court and that the children passing through that court are receiving the constitutional procedural protections to which they're entitled. Okay, well I don't understand the 48-hour rule and whether or not a hearing is consistent with due process or both adjudicatory and constitutional. And so is review and expungement of records. That is an adjudicatory function. To review a record and decide whether it meets the state law requirements for expungement is an adjudicatory function, isn't it? So let me address that in two ways. Your Honor is referring to various pieces of relief that we stated in our... Yes, it's right here, number four, page 36 of your complaint. Right, so a couple of points. First of all, Your Honor, the question about potential scope of relief is really a question for down the road at the remedial stage. We're at the threshold stage about can this case move forward. Are youth courts within the scope of this statute? Right, well if you're asking for things that would be wrapped up in the law that deals with whether or not you can get into an ongoing state court case, then it seems to me that I have to look at what are you seeking to determine whether or not you're going to get it mixed up in that. And I do think that deciding whether the policies for expungement are appropriate or not, you have to first finish the state court proceeding where they get to try to get expungement. And you have to say, well, they failed to get it. And then you can't get into these ongoing state proceedings. Your Honor, our complaint did suggest expungement as one potential remedy based on the fact that that has occurred. It occurred in previous civil rights cases. I think government counsel below emphasized, first of all, that it would be defendants setting the criteria for that. Second of all, it's not the primary relief we're seeking. Third of all, what relief would be appropriate or the scope of that relief would be within the discretion of the district court. And that is, again, a question for down the road. The only question before the court right now is can the case move forward on the pleadings. And again, we are not seeking to review individual decision making by these judges. We're not seeking to review probable cause determinations or adjudications of guilt. What we are seeking is to ensure that there are procedural safeguards in place like the probable cause hearings being on time, that they're actually making probable cause findings, that they're appointing counsel to juveniles facing incarceration, that they're holding probation revocation hearings before revoking a child's probation and before incarcerating them, that they're actually making findings that the juvenile has violated probation. Those are all procedural and forward-thinking systemic issues. Procedural and forward-thinking systemic issues that might not be required by state law and might not be required by constitutional law. And we have to go through them and adjudicate them to determine in a particular case, are you automatically entitled to a hearing and that sort of thing. All of these things that I've just mentioned are required by federal constitutional law. This is a statute designed to ensure on a systemic level that the federal constitution is being complied with. Defendants haven't really, other than that issue about the 48 hours, haven't challenged that all of these principles are required by the federal constitution. But again, even if they want to challenge that, that's a question for down the road. At this point, the only question before the court is, are Lauderdale County Youth Courts within the scope of the statute? And if they are, and if the court honors defendants' concession that the judges are not absolutely immune, then this case should move forward from the pleadings. Okay. So are you, does this not get into Rooker-Feldman at all? Why aren't those questions we have to look at to see about the pleadings and run to Rooker-Feldman, which I didn't, I was trying to say it, but I didn't say explicitly Rooker-Feldman to you. Sure. Your Honor, the district court below denied the defendants' Rooker-Feldman motion. Right, but we're looking to see, I mean, aren't we trying to decide if this is a complaint that it can be brought against, we don't have to rule in the same way the district court did, do we? Well, defendants have waived any argument on appeal that the court should affirm on the alternative grounds of Rooker-Feldman. Or on younger? They've waived that as well. They've waived it officially? Yes, and on pages 27 and 28 of the judge's brief, they haven't made any argument that this court should affirm on alternative grounds of abstention, nor would that be appropriate. Well, you know, we just had a big, didn't we have a case with whether we can consider abstention if the parties don't, whether or not the parties raise it, whether we should consider that, isn't that an issue that's... No, I think this court recently in a case called Gates v. Strain, which I think both of your honors were on, recognized that younger abstention can be waived, and the judges have waived that here. They haven't made any argument on appeal that this court should affirm on alternative grounds of abstention. Their arguments on immunity are limited to the arguments that they can only be, they can't be held liable for two narrow claims in our complaint, which are meritless arguments, but even if they had merit, would not be a basis for throwing out the entire case on the pleadings. Okay. I think you've absolutely saved your time for rebuttal. It's not being charged against you. We do have, this is an important case, and we have lots of questions for each side, so we're not being quite as, we want to make sure everybody has a fair chance and has equal time, but we want to make sure we get the questions answered. So thank you. May it please the court, my name is Luther Munford. I'm with the Butler Snow Firm in Jackson, Mississippi. I'm here on behalf of Judge Veldor Young-Rand and Judge Lisa Howell, who are with me at council table. Also at council table is Lee Thagard, who represents Lauderdale County. I don't know how the name county of Lauderdale ever got in this case. It's Lauderdale County. Hubbard says that it would be strange indeed to call a court an agency, that it's incontrovertible that a court is not an agency, and the conclusion that a court is not an agency inexorable. We believe Justice Stevens was right when he said those words. The government makes the remarkable claim that Bramlett is a case standing for the proposition that agency includes the court. Bramlett doesn't say that at all. The government has no case, zero case, no case from any jurisdiction that holds that a court is an agency. What Bramlett said, and this is left out of the quote in the government's brief, is that department, as used in this context, was meant to describe the executive, judicial, and legislative branches. It was the word department that was construed in Bramlett, and in the cases that followed Bramlett, not the word agency. You heard our questions. I mean, the syntactical points are good, but courts have agencies within them, which Hubbard acknowledged. That is acknowledged in footnote three, yes. And the executive, federally, has courts within it. So to me, it isn't a sweeping answer to say courts in or out. You have to look at the function of the court. Congress must have known. It's true across the country. The juvenile courts wear lots of hats. They do lots of nonjudicial things. I don't see why the aspects of courts that do nonjudicial things would somehow then fall out of 12601. You may accept that. You may be defending your clients as to their adjudicatory role, but to the extent that the Supreme Court of Mississippi in that, in Tewart and in the law, says that juvenile courts also designate prosecutors or are responsible for detention facilities. Yes, they are. Your argument is not that that then means those executive branch tasks are now removed from 12601, is it? I believe that the way those entities should be approached is that employment in this statute is a federal term. It's not state law. State law can't control it. State law can't say these people are employees or not employees for federal purposes. Under Title VII, there is a concept called co-employment that is used in the judicial arena where a judge was accused and the question was, was it the person who worked for the judge, an employee of the county? And the court said there's an issue of co-employment. They were mandated to determine whether under federal law that person was regarded as an employee of the county, even though the judge had retained them. Well, this is very responsive, just on your feet, and it's very reassuring to me. If we're trying to harmonize those defendants that are settling out, and of course the vastly important purpose to rein in executive or administrative branch officials that are committing patterns in practice, would that be something that you would recommend, that we have a remand of some sort to assess using exactly the paradigm you described, various court officials that in fact are administrative and executive? Well, they haven't sued those people. They haven't sued them. That's the answer here? Yes. In this case, they haven't sued them. They've only sued the judges and the county, right? That's the only two that's left. That's left, right. But I think that's the answer rather than the discretionary, I mean, rather than administrative functions. I mean, I think it's obvious from the statute there was an intent to cover parole officers. In the United States, as I understand it in the federal system, that is a separate agency. In Mississippi, the Department of Youth Services provides some of those functions and was responsible for the contract that was revised pursuant to the settlement. What about prosecutors? I'm sorry, this is extremely helpful to me. Because it looks like the Supreme Court of Mississippi, as interpreted in Mississippi law, specifically say the judges appoint prosecutors and the intake units in the juvenile courts file petitions alleging delinquency. Wouldn't those be executive branch? Had they charged them with a pattern in practice, they could be covered? If they're considered employed by the county, yes. But what if they're employed by the judges performing nonjudicial tasks and related to that, the detention facility correctional officers? I understand the court's question. It's obviously a logical distinction because the courts of appeal after Bramlett went that way. Of course, in Hubbard, the Supreme Court said we can't go there. We can't use the word department to go there. It had the footnote. But you shouldn't be suing the judge. This is the Chrissy F. case in the Fifth Circuit. Guardian ad litem. It's a constitutional case. It's in our brief. Chrissy F. A judge can't be grading the paper of the prosecutor or defense lawyer. A judge can't ethically be judging the performance of these people. Even though the judges appoint them. But what that case says is that the constitutional claim goes against the guardian ad litem, not against the judge. Even when the judge appoints the guardian ad litem? Yes. That's exactly what the case stands for? Yes. So that's an additional problem. The Bramlett case dealt with the word department. The word agency. The government says the word agency was in a federal statute. That's right. It was in a federal statute that referred to any administration or authority. Yet it still didn't cover courts. So there is no case that says that. In this case, there is, of course, the Division of Youth Services, which was settled. The settlement in 2015 was so successful that the school district people got invited to the White House to speak to President Obama. When the school district and the city and the Department of Youth Services settled, there was a big celebration. Because the judges didn't have to be part of it. The school to prison pipeline thing was solved without them. It is very important, Your Honor. My clients are elected public officials, countywide elected public officials. If there is any description of claims against them in this litigation, it should be limited to what the complaint says and what the department said in the court below. What the complaint says in paragraph is only in paragraph 3. It says two things. One is a pattern or practice of authorizing the repeated incarceration of children without fairness and due process such as a timely hearing and meaningful representation of an attorney. That is the 48-hour rule. The 48-hour rule was written by Mississippi in 2008 to get federal money from the Juvenile Justice Division of the Department of Justice. What we have in this case is the Civil Rights Division claiming that a rule written for the Juvenile Justice Division is unconstitutional. It makes no sense. What does that also tell us? That also tells us that you don't have to sue judges to get the rules of the road in Mississippi rewritten. When the rules are being written pursuant to the Juvenile Justice Division's work with the Department of Public Safety, yet another state agency that is involved in this case. Do we need to change the caption of the case? These are inofficial capacity claims. I think Judge Coleman is not. It is Judge Howell now. Does something need to be done? Also, if you say we say county of such and such, it is not called that. Is there some housekeeping that needs to be done in this case? That would make sense to me. Your Honor, we could submit a letter about that or a motion. The 28-J from each side about any housekeeping on the caption, if there is some consistency on that. No, go ahead. The claims in paragraph 3 are this 48-hour rule and then this thing about probation services. Excuse me, about revoking probation. Well, that had to do with the contract and that was resolved by the settlement. The proceeding here was very unusual. You have a complaint which has no specifics in it whatsoever. No claim these judges have individually done anything wrong. And then you had a hearing, an evidentiary hearing. These judges testified before Judge Wingate. That must be in the record. Yes, yes. Could you cite me to where it is because I have been looking for that for a while. The hearings are all at the end. Do you have a record site? Yes, yes. I was very hopeful to read that. The hearings begin at page, let's see. I think it is docket entry 120 is the transcript of the hearing on October 7, 2015. Then there is a telephone conference of October 27, 2016. That begins at page 1443 or about. I am just asking do you have an ROA site for where I can find their testimony? Their testimony begins at ROA 1352. Perfect. Thank you. That is wonderful. I have a question about what you are saying about the complaint. It doesn't say, you know, the juvenile judges have a policy and practice of doing X which violates the Fourth Amendment or the Fifth Amendment or whatever amendment or the Sixth Amendment and they have a pattern and practice. It doesn't go through and say that it is an official policy. You are right. It doesn't do the kind of things you normally see in a complaint. Is that before us or is that not before us because you have waived it? It is not in the record. Other than these hearings, there is no explanation as to what they are talking about. And the brief on appeal is even more unenlightening. The brief on appeal makes a lot of claims that aren't supported by the complaint. So what is before us? Is the only issue before us about whether agency applies or is whether or not this is a proper, is the ruling on the 12B before us? Is the ruling on the Rooker-Feldman before us? Is the ruling on the Younger abstention before us or is none of that before us? And the only issue we're here to say is, does this statute apply to the juvenile judges? In the abstract. Certainly that is the issue. Now, let's, you know. So in the abstract, we only have this abstract. We don't normally just decide issues in the abstract. We normally decide issues because they make legal, because it means the complaint fails or doesn't fail. Well, you could certainly. And so if the complaint fails for other reasons, are we not allowed to look at those? Or have you waived them officially? The court certainly can look at paragraph three of the complaint, which is the only specific language about the judges, and decide that those functions are judicial, not administrative, and affirm on that basis. I want to point out that nowhere in the claims for relief, paragraphs 163 to 191, is there any mention of the judges or youth court other than in the caption. That paragraph 190 alleges a pattern of practice by the city, the county, and division of youth services, and doesn't mention the judges. The government says in its brief that the judges fail to appoint juveniles at council for critical hearings. But if you look at pages 48 to 50 of the record, there's no such allegation against the judges. The government says the judges fail to permit juveniles to present witnesses on their behalf. But if you look again at 48 to 50, there's no allegation against the judges on that basis. The government says the judges don't afford a hearing before revoking probation. Paragraph 125 doesn't say the judges are responsible for that, as opposed to the informal adjustment mechanism mentioned in paragraph 133, or the settlement, which is Record on Appeal 932. Is the youth court a separate entity than the judges themselves? I don't think so. Okay, so if it says youth court, that counts as the judges in their official capacity throughout. I have word searched this complaint for judge, youth, and court, and I can't find anything that comes close to Iqbal Twombly other than paragraph 3. And then when they had the hearing and the government started briefing what they were complaining about, the only things they mentioned that they really went into was that they didn't think the public defender was paid enough, and this 48-hour rule. The government is just wrong. The city of Riverside doesn't have anything to do with this case, with this rule. In this situation, there is an intake officer. When a juvenile is brought in, there is an intake officer, who is a judicial appointee, who determines whether there is probable cause to find jurisdiction. It's the equivalent of a warrant under Mississippi law. And if he finds jurisdiction, and the word jurisdiction is used because it could be delinquency, it could be abuse or neglect, or it could be lack of supervision, then there is this 48-hour period with weekends and holidays accepted. And at the end of that, there is a probable cause here, with counsel and the whole deal. Okay. The district court interpreted 12601 as applicable only to police departments and other branches of law enforcement. But the government says that this renders superfluous the language that says law enforcement officers, or by officials or employees of any government agency responsible for administering juvenile justice. So I'm asking you, what would be a non-law enforcement employee that would fall within the statute so as not to make the language in the statute, I guess superfluous is not the right word, but ineffective. Division of use services. Division of use services. They write the probation contract that the government was complaining about. Okay. So that's a concrete example of something that would fall under the, if we, we don't have to reach. They were sued in this case. Okay, so we don't have to reach the issue about police pattern or practice at all, according to the way you're talking about it. We could just say that agency is not included because the judges are not included. But if we reach police pattern or practice as a gloss on that, there are other, it doesn't mean that the judges are. That's right. Because there are other entities that follow. Should we reach the police pattern or practice issue in any way? The title is significant. I think it goes to what Congress was thinking about. The title is also important in one particular way, which is that only if you go to the title of subchapter 8, state and local law enforcement, do you find a basis for excluding federal officials or judges from this statute. The statute doesn't say state. You have to go to the title to get state. We're not claiming federal coverage. But that's an interesting point, I think. The other, let's see it. Oh, Judge Wingate. You asked me what's before the court. Judge Wingate said he was ruling on immunity, and then his logic was abstention logic. If you look at Pulliam, you could argue that Pulliam got granted immunity, but assumed that O'Shea was good law, and so there would be some abstention. But Pulliam very specifically says that abstention is not immunity. We cannot defend abstention as a form of immunity. We have argued that the specific things that they're complained about are things they can't sue about, because you can't sue judges for their employees, and you can't sue judges for enforcing state law. Of course, recently this court in Choctaw County, 96, said it's not the judge, it's the sheriff who's holding the person in jail. If the court should disagree with our position on the statute, it might be appropriate to remand so we can go back to abstention. Because there are grounds for abstention. The case he relied on to not abstain was a Unit B case that involved Pulliam abstention, not Younger abstention. And we think, given the fact that the rules are being written, pursuant to the supervision and even audit of the Juvenile Justice Division of the Department of Justice, would be a very good reason for a federal court not to make a youth court judge in Lauderdale County rewrite them. What do we do with Machetta, the case that was in the 28J? Yeah. Well, it's another case that stands for the proposition that you can't sue a judge for the laws that the judge enforces. You shouldn't be able to sue these judges for following the law on the 48-hour. In their judicial adjudicatory capacity. Yes. But it draws just the distinction you and I were talking about before. They wouldn't have that immunity were they acting in an executive or administrative role. That's the line that Machetta eliminates. I understand. You understand where? I didn't. Okay, I'm sorry. I don't have the administrative aspect of Machetta in my mind. What's the, what did it say? Well, as you described, when they're adjudicating a case, Machetta stands for that proposition. But my larger concern that if states assign a lot of hybrid non-judicial roles to courts, I've been educated by you to see that those consistent with your brief, those roles, even if they're under the orbit of the judiciary or the court, could still be proper defendants, could be within the scope. I think the way to reserve that issue would be to say that they could be considered to be employed by the county. The governmental authority would be the county. Another governmental authority under federal definition of employment rather than try to figure out whether what's an administrative function and what's a judicial function. I see. So that's, okay. I think that would be more practical and could be reserved for other decision, for future cases. This, you know, we've got what we've got in this case. Again, looking at Mississippi law, it wasn't brief, but it could be important. Who appoints the defenders? The judges do. The judges do, too. They appoint the prosecutors, the defenders, and the guardians? I believe so. Yes. Okay. And I think I'm right that statutorily they're authorized also to supervise the incarcerative facilities, the detention facilities. They appoint the administrator who runs the incarceration facility. In this particular case, this county doesn't have one. That's why the delicate, very appropriate candor in your brief at 21, which is that it could cover all those roles. Those are classically executive. Yes. Yeah, okay. So they have to be swept in, and you're telling me, if you just think about it on your feet now, look at federal employment law. Yeah. I mean, I could locate and send the court a Sixth Circuit case  I would benefit from that. Dealing with a judge. Is that right? That would be fine. So you can file within seven days that supplemental authority, and if you have any supplemental authority to respond to that, counsel for the government, you may have seven days after that. Okay. But you're not required to file anything supplemental. I'm just giving you the opportunity so that each side has the same opportunity. Just a few points, Your Honor. First, Mr. Mumford repeatedly said that we shouldn't be suing the judges, and I just want to clarify. This case isn't about who can be sued under the statute. It's not about who's a proper defendant under the statute. This case is about whose conduct falls within the scope of the statute. So both defendants have said that youth courts, officials and employees of youth courts, are not within the scope of the statute. I don't understand the point you're making, because if they can't be sued, then it doesn't matter whether or not they are involved in the conduct. Your Honor, it's a separate point. The point is that our position is that their conduct, the conduct of employees and officials of youth courts, are within the scope of the statute. There's a separate question about who should be sued for that, whether you should sue the judges in their official capacity, whether you should sue the prosecutors. Well, we have that right now. Can you sue the judges in their official capacity for that? That is before us. Right this second. Your Honor, obviously our position is that you can. The text of the statute specifically says you can sue any governmental authority or any agent. But, again, my point is the question before the court is who should be sued. Okay. No, stick with that exact textual language. You're saying the governmental authority here is the court, which therefore has to be shown to engage in a pattern or practice, but it goes on to say done by, and then it lists officials, right? And no one is disputing law enforcement officials, yet on its concession law enforcement happens to be employed by the courts. You heard what I thought was very helpful. It is not an all win or lose scope of 12601. It really may be that the proper defendants would be the whole host of people doing executive functions, as opposed to judges qua judges. Your Honor, I think I have two responses to that. One is that a number of the people that, or the types of employees that defendants have mentioned, could be, in many states, actually court employees, defined as court employees, and defendants. I'm not worried about that definition. That would be covered on this analysis. I don't think it would if the court concludes that courts, if they are court employees. I know, but I think we're past this just, again, Justice Stevens says at a broad level we aren't conceptually, I'm not even sure we have freedom to say courts can be agencies, given the language of Hubbard. You've made that argument crystal clear. I'm asking, are you able to shift and consider his argument, that Title VII would answer a lot of my concerns, that many relevant actors in a court system would still be subject to appropriate correction through 12601? Do you embrace that or not? The only way that they would be is if they are considered employees not of the court. If they are considered employees of the court, then on the plain text of the statute, if this court construes courts to be outside the scope of the statute, then they wouldn't be covered. I don't know whether you want to call them adjudicative functions or administrative functions. This court, for example, in a recent case in O'Donnell v. Harris County, just affirmed an injunction against the Harris County, Texas judges, for their pretrial bail practices. And the court sort of said, well, in the functions of their pretrial bail, they're sort of acting as policy makers for the county. The court could consider the judges in this case that way. Like I said, we're not – That's a 1983 language person. No problem with that. Sure. My only point is that I sort of don't know that it's a helpful distinction to talk about adjudicative versus administrative functions, because, again, the types of – Your time is running out? He says that if we look at your complaint, all that exists as to the named defendant judges is in paragraph 3. I don't know. I don't really know where they got that idea. Well, why don't you tell me where it describes the conduct of the judges. Sure. ROA 53, the youth court does not regularly hold hearings on probation violations. I'm talking the complaint? This is on the complaint. Page 24 of the complaint, ROA 53, the youth court does not regularly hold revocation hearings. Later it says the detention hearing for a child on probation is not a hearing on the substance of violations, but rather a dispositional hearing. Earlier on page 48, the youth court holds detention hearings. This is the probable cause here. But those would be violative of current existing Mississippi law, correct? No, not at all, Your Honor. Mississippi law requires, Mississippi law 4321-309 requires, for example, youth court judges to make probable cause findings. Assignment of attorneys. Right. It requires them to make probable cause findings. Our argument is that in practice, based on our investigation, they're not complying. But then any individual juvenile would be able to overturn the delinquency of adjudication because you're telling me, in fact, they aren't complying with the law. Your Honor, an individual juvenile might be able to bring an appeal in his individual case, but this is a statute that allows the United States to sue for systemic relief and to seek reforms on a systemic basis. Okay, but that does get me back to my first question to you, and maybe you thought of it. What's the limiting principle that would mean, under your logic, it excludes higher court rulings that are approving practices that you say are unconstitutional? Well, Your Honor, okay, so for example, I think that to the extent that a higher court would be considered a body that is responsible for the administration of juvenile justice, if a higher court, for example, is refusing to hear juvenile cases, that would be an across-the-board systemic problem. We don't think that the statute would apply to higher court-like decisions in an individual case, that this particular decision, disposing of a juvenile's appeal, runs contrary to the Constitution, and those aren't the types of claims that we're bringing in these 12601 cases. The types of claims we're bringing are across-the-board systemic problems that may or may not comply with state law, but our allegation is that they do not comply with the U.S. Federal Constitution, and that's what this statute allows us to pursue. I have three questions. How do you distinguish Chrissy M.? Who's the first one? Yes. Your Honor, defendants raise Chrissy F. in the context of their immunity argument, that they can't be held liable for our allegations with respect to the systemic deficiencies in the indigent defense system. Right. Just because you hire the defense attorney, I mean, that you authorize their hiring, that you are then responsible for their behavior. Right. So we're not seeking to hold the judges responsible for the behavior of public defenders before them. The claim that had to do with systemic deficiencies in the indigent defense system really went more towards... So that's not against the judges? It's more towards the county, because the county is the body that contracts with the public defenders, that provides the funding and the resources for the public defenders. Okay. So that's to the county. Yes. What about Marchetta and Bauer? Do you believe that you are free to allege things for not just declaratory relief, since this is in 1983, but for injunctive relief in the first instance under this statute? The statute plainly allows for injunctive relief. But in the first instance against judges? Yes. And like in 1983 where Marchetta talked about how you have to first have a DAC action, and you only have one relief for DAC action. Yes. If the court concludes, agrees with us, that the youth courts are within the scope of the statute, then the section B of the statute plainly allows us to seek declaratory or equitable relief. Those cases stand for the proposition that you can't sue judges. There's no Article III standing to sue judges if you're challenging the constitutionality of a state law. And as I said in my opening presentation, we're not challenging the constitutionality of any state law. We're challenging the practices that are not in line with the federal constitution. Okay. I'm still really struggling with this. Maybe you can try one last time. Sure. If the state law says you can do weekends and holidays differently, and they're complying with the state law, and still they believe they're doing a 48-hour rule, but they're doing it in compliance with the state law that extends it under special circumstances, aren't you saying the state law is unconstitutional? No, we're not, Your Honor. The same exact type of statute existed in California in County of Riverside v. McLaughlin. It excluded holidays and weekends. But the Supreme Court still said County of Riverside's practice of complying with that, or of excluding holidays and weekends as state law permitted, is not in line with the constitution. If the county were to come into compliance with County of Riverside v. McLaughlin and hold hearings within 48 hours, which may include a weekend or a holiday, that would not cause them to come into conflict with the state statute. Well, it would. It would cause a judge in an individual case to have to say, I know the state statute says this, but I've been told in this lawsuit that the federal constitution is in conflict with it, and therefore I have to, I don't know what I'm supposed to do because I've sworn to uphold the rule of law as this is ongoing. So this is, I mean, it's just, it's not the county and their policies, it's the judge and their rulings. Your Honor, the state statute does not prohibit the holding of hearings on weekends and holidays. It would not, it would not be violating state law to come into compliance with Riverside. It permits it, but it doesn't. They would have to determine whether the county or some other individual complied. That's how it would come up. That they weren't brought for their hearing in time or whatever. Some other person in the system would be the person who the claim would be made against. What we're alleging is that Lauderdale County, through its youth court, is not providing timely probable cause hearings. They're not providing hearings within 48 hours as County of Riverside requires. So as a matter of course, if a juvenile is arrested on a Thursday or a Friday, they may be held in detention until the following Monday or Tuesday, longer than 48 hours. Okay, but wouldn't it be the, someone would sue the county, they would say that they, or else they would bring a claim that they didn't have a timely hearing and therefore their due process was violated. That's the way that it would arise. And the judge would have to decide the case. Your Honor, certainly individual juveniles could raise, we're not suggesting that they couldn't raise claims under County of Riverside. But we've, as one of the myriad allegations in this case, is that the county is systematically not complying with the Fourth Amendment as required under County of Riverside. And also as required under Gerstein. One of the allegations is they're not actually even making probable cause findings at the probable cause hearing. I'd like to ask the last question. Does the county rise or fall with the judges, whatever we do with one, we do with the other, or do you pull them apart in any way? Your Honor, we haven't made an independent argument on appeal for keeping the county in the case. I would say that if the court, for example, were to agree with us that youth courts are within the scope of the statute but somehow determine on the immunity issue that the judges are not proper defendants, then I think that the case could proceed against the county. What if we were to, hypothetically, what if we were to determine the contrary, that they're not within, that the judges are not within the scope? If the court concludes that the youth court is not within the scope of the statute, then we haven't presented an independent basis for keeping the county. So we should let the county go too? Correct. Okay. Thank you. Thank you.